HAROLD C. KEAN AND MARGARET I. KEAN, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 1306–67, 1341–67—1344–67, 1352–67. Filed December 5, 1968.

---

[1] Cases of the following petitioners are consolidated herewith: Murdock D. MacPherson and Mary Ellen MacPherson, docket No. 1341–67; C. E. Milam and Verda Milam, docket No. 1342–67; Inga L. Bardahl, docket No. 1343–67; Ole Bardahl, docket No. 1344–67; and William R. MacPherson and Dorothy L. MacPherson, docket No. 1352–67.

*Joseph H. Trethewey*, for the petitioners.
*Gary C. Randall*, for the respondent.

FAY, *Judge*: Respondent determined deficiencies in the Federal income taxes of petitioners as follows:

| | | 1962 | 1963 | 1964 |
|---|---|---|---|---|
| 1306-67 | Harold C. Kean and Margaret I. Kean | $26,003.90 | $5,835.77 | |
| 1341-67 | Murdock D. and Mary Ellen MacPherson | | 2,442.87 | $2,005.56 |
| 1342-67 | C. E. Milam and Verda Milam | 571.42 | 6,993.00 | 3,783.16 |
| 1343-67 | Inga L. Bardahl | 1,074.72 | 4,200.67 | |
| 1344-67 | Ole Bardahl | 1,081.02 | 4,200.67 | |
| 1352-67 | William R. MacPherson and Dorothy L. MacPherson | 1,435.98 | 5,365.03 | |

By joint motion of the parties at the time of trial herein, these dockets were consolidated for consideration. All issues in all dockets have been agreed upon by the parties except one, common to all dockets, which is whether any of the petitioners are entitled to deduct the amounts claimed on their 1962 and 1963 income tax returns as their prorata shares of the net operating losses incurred by Ocean Shores Bowl, Inc., for the short taxable year October 1 through December 31, 1962, and the taxable year 1963.

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts, together with the exhibits attached thereto, is hereby incorporated by this reference.

Harold C. and Margaret I. Kean, petitioners in docket No. 1306-67, are husband and wife. They filed joint returns on the cash receipts and disbursements basis for the years 1962 and 1963 with the district director of internal revenue at Tacoma, Wash. At the time of the filing of their petition herein, they resided in Seattle, Wash.

Murdock D. (hereinafter sometimes referred to as Murdock) and Mary Ellen MacPherson, petitioners in docket No. 1341-67, are husband and wife. They filed joint returns on the cash receipts and disbursements basis for the years 1963 and 1964 with the district director of internal revenue at Tacoma, Wash. At the time of the filing of their petition herein they resided in Seattle, Wash.

C. E. and Verda Milam, petitioners in docket No. 1342-67, are husband and wife. They filed joint returns on the cash receipts and disbursements basis for the years 1962, 1963, and 1964 with the district director of internal revenue at Tacoma, Wash. At the time of the filing of their petition herein, they resided in Langley, Wash.

Inga L. Bardahl, petitioner in docket No. 1343–67, is the wife of Ole Bardahl, petitioner in docket No. 1344–67, and was such in the years 1962 and 1963. They each filed separate returns for the years 1962 and 1963 on the cash receipts and disbursements basis with the district director of internal revenue at Tacoma, Wash. At the time of filing their petitions herein, they resided in Seattle, Wash.

William R. (hereinafter sometimes referred to as William) and Dorothy L. MacPherson, petitioners in docket No. 1352–67, are husband and wife. They filed joint income tax returns on the cash receipts and disbursements basis for the years 1962 and 1963 with the district director of internal revenue at Tacoma, Wash. At the time of filing their petition herein, they resided in Seattle, Wash.

Ocean Shores Bowl, Inc. (hereinafter referred to as Bowl), is a Washington corporation formed on March 20, 1962. Bowl initially operated on a fiscal year basis with its first fiscal year beginning on March 20, 1962, and ending on September 30, 1962. On October 30, 1962, Bowl filed an election on Form 2553 not to be subject to Federal income taxes pursuant to section 1372 of the Internal Revenue Code of 1954. At that time its shareholders of record were Harold C. Kean, C. E. Milam, Ole Bardahl, William R. MacPherson, Glen Corning, and Hilmer Holgerson. The stock record book indicated that each of the individuals owned a block of 125 shares. Accompanying Bowl's election to be taxed as a small business corporation was a consent to such election signed by all of the shareholders of record and their wives. (Washington is a community property State.) The election was timely made, and Bowl had only one class of stock issued and outstanding. As a result of the election, Bowl filed a small business corporation short-year return for the period October 1, 1962, through December 31, 1962 (hereinafter referred to as the short taxable year 1962). In 1963 Bowl changed to the calendar year basis of reporting income. A calendar year return was filed for 1963.

Petitioners William R. MacPherson and Murdock MacPherson are brothers. They are engaged in the real estate business in a company called MacPherson's, Inc. The stock of MacPherson's, Inc., is owned in the following amounts: 45 percent by William, 45 percent by Murdock, and the remaining 10 percent by their mother.

William and Murdock often invested jointly. These joint investments were ordinarily informal and were conducted without any written agreement. The initiating person usually managed the investment. William never held a power attorney for his brother, Murdock.

MacPherson's, Inc., was the exclusive sales agent for a recreational development area located on the Pacific Ocean and known as Ocean Shores, Wash. This land was owned by Ocean Shores Estates, Inc.,

and was the largest resort development north of California. Facilities were built at Ocean Shores to develop it as a community. There were a golf course, bowling alley, shopping center, restaurant, and three or four motels. These facilities helped promote the sale of lots by Ocean Shores Estates. The bowling alley was owned by Bowl, the corporation in this case. Compared to the other facilities built at Ocean Shores, the bowling alley was a small investment.

Murdock's direct activities with MacPherson's, Inc., were confined to real estate sales in the city of Seattle. He had no immediate responsibilities or connection with either the development of Ocean Shores or the books and records of MacPherson's, Inc. The books and records of MacPherson's, Inc., were the initial responsibility of an accountant, Don R. Minkler, who had been with the company for 22 years. However, as equal owners of 90 percent of the stock of MacPherson's, Inc., Murdock and William were ultimately responsible for the contents of its books and records.

During an audit by the Internal Revenue Service in 1965, it was discovered that the 125 shares of Bowl stock and the Bowl debentures issued to William in 1962 were paid for with a check of MacPherson's, Inc., charged at that time one-half to William's drawing account and one-half to Murdock's drawing account. No attempt has ever been made to reverse this charge on the books of MacPherson's, Inc. Moreover, Murdock has never been repaid by William for the amounts taken out of his drawing account to pay for the stock and debentures. During 1963 additional loans were made to Bowl by virtue of checks drawn on MacPherson's, Inc.

For the short taxable year 1962 Bowl reported a net operating loss of $15,316, which the petitioners deducted on their 1962 income tax returns as follows:

| | |
|---|---|
| William and Dorothy MacPherson | $2,552.66 |
| C. E. and Verda Milam | 1,250.00 |
| Harold and Margaret Kean | 1,250.00 |
| Ole Bardahl | 1,276.33 |
| Inga Bardahl | 1,276.33 |

For the taxable year 1963 Bowl reported a net operating loss of $56,638.28 which the petitioners deducted on their 1963 income tax return as follows:

| | |
|---|---|
| William and Dorothy MacPherson | $4,719.86 |
| Murdock and Mary Ellen MacPherson | 4,719.86 |
| C. E. and Verda Milam | 3,750.00 |
| Harold and Margaret Kean | 9,439.72 |
| Ole Bardahl | 4,719.85 |
| Inga Bardahl | 4,719.85 |

On their 1964 joint income tax returns, petitioners William and Dorothy MacPherson and petitioners Murdock and Mary Ellen MacPherson each reported the sale of one-half of (1) the block of 125 shares of Bowl stock and (2) the Bowl debentures which were both then standing in the name of William MacPherson. The reporting of this item was quite evident in that a special schedule labeled "Installment Sale—Long Term Capital Gain" was prepared for each of these tax returns.

The 1962, 1963, and 1964 joint income tax returns of the William MacPhersons, which were prepared by Don R. Minkler, were signed by both William and Dorothy. The 1963 and 1964 joint income tax returns of the Murdock MacPhersons, which were also prepared by Don R. Minkler, were signed by both Murdock and Mary Ellen. None of these tax returns were complex.

Murdock does not appear as a stockholder on Form 2553, "Election by Small Business Corporation," which was submitted to the Internal Revenue Service on October 30, 1962, by Bowl. Similarly, neither Murdock nor his wife appears as signatories on the "Shareholders' Consent to Election" which accompanied the Form 2553. There is no evidence in the record to indicate that they ever filed such a consent. Finally, Murdock does not appear as a shareholder in the schedules attached to Bowl's tax returns for the short taxable year 1962 and the taxable year 1963 nor does he appear as a shareholder on the stock certificate issued to William. When this stock was sold on January 1, 1964, the certificate was not endorsed on its back. Rather, it was transferred by a separate document entitled "Assignment Separate from Certificate." Murdock did not sign that assignment. Only William signed it. This stock was transferred to Ocean Shores Estates, Inc., the company for which MacPherson's, Inc., acted as exclusive agent with respect to land sales at Ocean Shores, Wash.

During the years in question, the Uniform Stock Transfer Act was in effect in the State of Washington.

No dividends were paid by Bowl in either the short taxable year 1962 or the taxable year 1963.

OPINION

The issue for decision is whether any of the petitioners are entitled to deduct the amounts claimed on their 1962 and 1963 income tax returns under section 1374(a)[2] as their prorata shares of the net operating losses incurred by Bowl for the short taxable year 1962 and the taxable year 1963. This issue hinges upon resolution of the question whether the October 30, 1962, subchapter S election filed by Bowl was

---

[2] All statutory references herein are to the Internal Revenue Code of 1954.

valid.[3] An election under section 1372 [4] is valid only if all of the persons who are shareholders filed timely consents thereto.

Respondent's position is that Bowl's subchapter S election was invalid. He argues that Murdock was the beneficial owner of one-half of the Bowl shares issued to his brother, William, and was thus a shareholder of Bowl for purposes of section 1372(a). He reasons from this that the failure of Murdock and his wife to make a timely consent to Bowl's election, as required by section 1372(a), invalidated the election.

Petitioners' position is that Bowl's October 30, 1962, subchapter S election was valid because Murdock was never one of its shareholders.

On the basis of the record as a whole, we conclude that petitioners did not introduce sufficient evidence to prove that Murdock was not the beneficial owner of one-half of the Bowl stock issued to his brother, William. Thus petitioners have failed to prove that Murdock was not a shareholder of Bowl for purposes of section 1372(a). Petitioners have therefore failed to overcome the presumptive correctness of the Commissioner's determination that Bowl's subchapter S election was invalid because one of its shareholders failed to file a timely consent to the election. Indeed, in many instances the evidence tends to support respondent's determination rather than refute it.

The evidence indicates that the management of the MacPherson brothers with regard to their personal investments was very loose. Written agreements were not used. Money for investments sometimes came from their MacPherson's, Inc., drawing accounts. At other times the money came from other sources. William and Murdock often invested jointly. The 125 shares of Bowl stock issued to William were paid for with funds of MacPherson's, Inc. On the books of Mac-Pherson's, Inc., payment for these shares was charged equally to the drawing accounts of William and Murdock. Murdock was never reimbursed for the amounts charged to his drawing account. On their 1963 income tax returns the William MacPhersons and the Murdock MacPhersons each deducted one-half of the prorata share of the 1963 net operating loss of Bowl attributable to the 125 shares held in William's name. On their 1964 income tax returns the William MacPher-

---

[3] The parties agree that Bowl was a "small business corporation" as defined in sec. 1371(a).

[4] SEC. 1372. ELECTION BY SMALL BUSINESS CORPORATION.

(a) ELIGIBILITY.—Except as provided in subsection (f), any small business corporation may elect, in accordance with the provisions of this section, not to be subject to the taxes imposed by this chapter. Such election shall be valid only if all persons who are shareholders in such corporation—

(1) on the first day of the first taxable year for which such election is effective, if such election is made on or before such first day, or

(2) on the day on which the election is made, if the election is made after such first day, consent to such election.

sons and the Murdock MacPhersons divided the gain realized on the sale of the Bowl stock and debentures equally.

The inference which naturally flows from these facts is that William and Murdock jointly invested as coowners in the 125 shares of Bowl stock issued to William. Under the circumstances herein Murdock must be regarded as the beneficial owner of one-half of the Bowl stock held in William's name. He must therefore be considered to be a shareholder of Bowl for purposes of section 1372(a). *Alfred N. Hoffman*, 47 T.C. 218 (1966), affirmed per curiam 391 F. 2d 930 (C.A. 5, 1968); sec. 1.1371-1(d)(1), Income Tax Regs.[5]

The main thrust of petitioners' case is an attempt to show that Murdock had no interest in the Bowl shares issued to William. William and Murdock MacPherson each testified that the 125 shares of Bowl stock belonged solely to William and that they were not aware of the fact that payment for this stock was charged equally to their drawing accounts on the books of MacPherson's, Inc., until the Internal Revenue Service audit in 1965.

Although we have given careful consideration to the testimony of the MacPherson brothers, we cannot accept it. Neither of them furnished a plausible explanation of why, if in fact Murdock erroneously paid for one-half of the Bowl shares issued to William, he was never reimbursed after they discovered this "error." In addition, we find it difficult to believe that they had no knowledge of the manner in which the Bowl investment was treated on the relatively uncomplicated income tax returns filed by each of them in 1963 and 1964. On the whole, their testimony appears to us to be self-serving and unconvincing.

There is another important reason why we are convinced that petitioners have not demonstrated that Murdock had no interest in the 125 shares of Bowl stock issued to William. If, as petitioners contend, the accountant for the MacPherson brothers arbitrarily (1) charged each of their drawing accounts for one-half the purchase price of the Bowl shares issued to William; (2) deducted one-half of the 1963 net operating loss of Bowl attributable to these shares on the 1963 return of the William MacPhersons and the other half on the 1963 return of the Murdock MacPhersons; and (3) included one-half of the gain realized from the sale of these shares on the 1964 return of the William MacPhersons and the other half on the 1964 return of the Murdock MacPhersons, he should have been called to attest to these facts.[6] The accountant was a potential witness whose relationship to

---

[5] In pertinent part this regulation provides as follows:

Ordinarily, the persons who would have to include in gross income dividends distributed with respect to the stock of the corporation are considered to be the shareholders of the corporation. * * *

[6] Petitioners did not show that the accountant was unavailable. In fact, in their reply brief petitioners indicate that he was present during the trial and was prepared to testify.

one of the parties is such that he would ordinarily be expected to favor that party. He was available and appeared to have special information relevant to the case. Because petitioners did not call him, the inference arises that his testimony would have been unfavorable. McCormick, Evidence, sec. 249, p. 533 (1954).

Petitioners raise some secondary arguments. The first is that there is no basis in the statute or committee reports for that part of section 1.1371-1(d)(1), Income Tax Regs.,[7] which provides, in effect, that the shareholders of a subchapter S corporation are those persons who would be required to include in gross income any dividends distributed by tht corporation. Petitioners argue that "record" ownership should be used to determine whether a person is a shareholder of a subchapter S corporation. They point to the Senate Finance Committee Report (S. Rept. No. 1983, 85th Cong., 2d Sess., p. 87) which refers to the consenting shareholders of a subchapter S corporation as the shareholders "of record."

We disagree. The basic congressional purpose in enacting subchapter S was "to permit electing corporations to forgo the payment of tax and require their shareholders to report the corporate income (whether or not distributed as their own for tax purposes." *Alfred N. Hoffman, supra* at 233, 234; *W. C. Gamman,* 46 T.C. at 7 (1966). See S. Rept. No. 1983, 85th Cong., 2d Sess., pp. 87-89. Shareholders "of record" are not always accountable for tax purposes for the income of a corporation whose stock has been issued to them. Many such shareholders hold only legal title, for example, in a fiduciary capacity, as agent for another, or merely as security for payment of a debt. Thus, despite the fragmentary reference in the committee report to consenting shareholders as those "of record," we think that the regulation reasonably implements the legislative mandate to tax the undistributed taxable income of a subchapter S corporation to those persons who are its real owners, the persons who have a beneficial interest in its stock and thus would be accountable for tax purposes for any dividends it distributed. We therefore conclude that the regulation in question is valid.

Next, in their reply brief petitioners for the first time contend that even if we conclude that Murdock was a Bowl shareholder we should still consider Bowl's subchapter S election to be valid. Petitioners claim that the election can be regarded as valid because either (1) under an agency theory the shareholder consent filed by William as coowner of 125 shares of Bowl stock was sufficient to have signified the consent of Murdock to the election, or (2) under section 1.1372-

---

[7] See fn. 5, *supra.*

3(c) of the regulations [8] Murdock is entitled to perfect his consent even at this late date.[9]

We do not agree with either of the petitioners' claims. With respect to the first, there is not one shred of evidence that in filing his consent William purported to act as an agent for Murdock. In fact, the evidence establishes that William never held a power of attorney for Murdock. Under these circumstances we are unable to conclude that the shareholder consent filed by William was sufficient to signify Murdock's consent to the election. See *Homer W. Forrester*, 49 T.C. 499, 508 (1968).

Likewise, there is no merit in petitioners' second claim that Murdock can file a consent to Bowl's October 30, 1962, election now. We rejected a substantially similar argument in *William Pestcoe*, 40 T.C. 195 (1963). In that case the petitioners contended that an untimely subchapter S election made by a corporation in which they were the sole shareholders should be regarded as valid because the Commissioner had the power and authority to extend the time for filing such election under section 6081(a) of the Code. We concluded that the argument was not properly raised because there was "no evidence in this record that the Commissioner refused to grant an extension or even that [the corporation] ever requested one." That conclusion is equally applicable to the instant case because there is no evidence herein that the district director refused to allow Murdock to file a late consent or even that Murdock ever offered to file one.

---

[8] Sec. 1.1372–3. Shareholders' consent.

(c) *Extension of time for filing consents.* An election which is timely filed for any taxable year and which would be valid * * * except for the failure of any shareholder to file a consent within the time prescribed in paragraph (a) or (b) of this section will not be invalid * * * for such reason if—

(1) It is shown to the satisfaction of the district director with whom the election under section 1372(a) was filed that there was *reasonable cause for the failure to file such consent and that the interests of the Government will not be jeopardized by* treating such election as valid, * * *

(2) Such shareholder files a proper consent to the election within such extended period of time as may be granted by the district director, and

(3) New consents are filed within such extended period of time as may be granted by the district director, by all persons who were shareholders of the corporation at any time during the taxable year with respect to which the failure to consent would (but for the provisions of this paragraph) cause the corporation's election to be invalid * * * and by all persons who were shareholders of the corporation subsequent to such taxable year and prior to the date on which an extension of time is granted in accordance with this paragraph.

[Emphasis added.]

[9] Petitioners ask us to hold that their situation satisfies the applicable requirements of sec. 1.1372–3(c), Income Tax Regs. Their argument is that there was reasonable cause for Murdock's failure to file a timely consent to Bowl's Oct. 30, 1962, election in that neither he nor any of the Bowl shareholders of record believed that he was a shareholder in Bowl. Petitioners contend that the interests of the Government will not be jeopardized because they will merely be securing the subchapter S treatment they originally thought they had obtained. Petitioners indicate that all of the record shareholders, as well as Murdock, would be willing to file new consents for 1962 and 1963.

Petitioners have failed to overcome the presumptive correctness of the Commissioner's determination that Bowl's subchapter S election was invalid. It follows that the petitioners are not entitled to deduct the amounts claimed on their 1962 and 1963 returns as their prorata shares of the net operating losses of Bowl for the short taxable year 1962 and the taxable year 1963.

To reflect the issues agreed upon by the parties,

*Decisions will be entered under Rule 50.*