JOHN R. OZIER and MILDRED C. OZIER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ozier v. Commissioner
Docket No. 4392-74.
United States Tax Court
T.C. Memo 1977-53; 1977 Tax Ct. Memo LEXIS 390; 36 T.C.M. (CCH) 236; T.C.M. (RIA) 770053; March 2, 1977, Filed H. Stennis *391 Little, Jr.,Larry T. Thrailkill, and William B. Owen, for the petitioners. Wesley J. Lynes, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency of $66,244.28 in petitioners' Federal income tax for 1969. Other issues having been conceded by petitioners, the only one remaining for decision is whether G-O Enterprises, Inc., a corporation in which petitioner John R. Ozier was a shareholder, was eligible under sections 1371 and 1372[1]/ to elect to be taxed in 1969 as a small business corporation. FINDINGS OF FACT Petitioners John R. Ozier (hereinafter referred to as petitioner) and Mildred C. Ozier, husband and wife, were legal residents of Nashville, Tennessee, at the time their petition was filed. They filed their 1969 joint Federal income tax return with the Director, Southeast Service Center, Chamblee, Georgia. G-O Enterprises, Inc. (hereinafter G-O), was incorporated on September 26, 1967, under the laws of *392 the State of Tennessee, for the purpose of owning and operating the Andrew Jackson Hotel in Nashville, Tennessee. The initial shares of stock were issued as follows: Certificate
Shares
Shareholder
No. 1
-0-
Sample for minutes
No. 2
37-1/2
John R. Ozier
No. 3
37-1/2
G & K Enterprises
No. 4
25
Union Street Investment Co.
According to the stock record book of G-O, the abovelisted stock issue was the only stock issued by the corporation. G & K Enterprises, one of the original shareholders of G-O, was a partnership composed of Frederic Gregg, Jr. (hereinafter Gregg), and Max Komisar. Sometime between G-O's incorporation on September 26, 1967, and January 1, 1969, the ownership of the 37-1/2 shares of stock originally issued to G & K Enterprises was obtained by Gregg. This change in ownership was not reflected on the stock record book of G-O. Union Street Investment Company (hereinafter Union or the partnership), another original shareholder of G-O, was a partnership established July 1, 1963, by two brothers, John J. Hooker, Jr., and Henry W. Hooker. Subsequently, on November 1, 1966, Union's partnership agreement was amended by adding Eugenia *393 Fort Hooker, wife of John J. Hooker, Jr., to the partnership. The amendment also provided that the net profits or losses distributable or chargeable to John J. Hooker, Jr., would be reduced from 50 to 25 percent and that the other 25 percent would be distributable or chargeable to Eugenia Fort Hooker. Mrs. Hooker had no duties or voice in respect of the management or operation of the partnership. During 1968 and 1969, Union had substantial assets and liabilities and engaged in transactions involving millions of dollars each year. On numerous occasions John J. Hooker, Jr., and Henry W. Hooker had withdrawn as much as $100,000 from the partnership. Such withdrawals were made pursuant to an oral understanding between the two brothers and required no formal authorization by the partnership. However, each such withdrawal of money was reflected on the partnership records. Prior to January 1, 1969, Frank Woods (hereinafter) Woods), secretary of G-O, advised Henry W. Hooker that a subchapter S election for G-O was appropriate in view of the net operating losses then being experienced by that corporation. Woods further advised Henry W. Hooker that, in order to have a valid election, *394 the stock owned by Union would have to be transferred to John J. Hooker, Jr., and Henry W. Hooker individually. The election was also discussed with Gregg and petitioner, but the necessary transfer of Union stock was not discussed with John J. Hooker, Jr., or Eugenia Fort Hooker. On January 30, 1969, G-O filed Treasury Form 2553, Election by Small Business Corporation, to be effective for the taxable year beginning January 1, 1969, along with consents signed by petitioner, Gregg, John J. Hooker, Jr., and Henry W. Hooker. The election and consents reflect that the shares of G-O held by the stockholders were as follows: Date Stockholder
Shares
Acquired
John J. Hooker, Jr.
12-1/2
1/29/69
Henry W. Hooker
12-1/2
1/29/69
Frederic Gregg, Jr.
37-1/2
9/27/67
John R. Ozier
37-1/2
9/27/67
However, G-O's stock record book contains no record of any transfer of Union's 25 shares of G-O stock to John J. Hooker, Jr., or Henry W. Hooker or to Eugenia Fort Hooker. After being advised by Woods to transfer ownership of the G-O stock from Union to the individual partners, Henry W. Hooker agreed to such transfer and relied on Woods to carry out the necessary *395 steps. Woods made an attempt to locate stock certificate No. 4, representing Union's ownership of 25 shares of G-O. He did not locate the certificate until May of 1969, when he learned that it was being held by the Third National Bank in Nashville (hereinafter sometimes the bank) as collateral for a loan of $85,000 to Union. The certificate had been so held by the bank since December 6, 1967. On May 2, 1969, the bank released to Woods certificate No. 4, representing the 25 shares of G-O stock held by Union, for the purpose of having it exchanged for certificates issued in the names of John J. Hooker, Jr., and Henry W. Hooker. New certificates Nos. 4 and 5, together representing 25 shares of G-O stock in the names of John J. Hooker, Jr., and Henry W. Hooker, were returned to the bank on July 2, 1969. During the period from December 6, 1967, when the 25 shares of stock were first received by the bank, until July 29, 1969, when the stock was finally released by the bank, the stock was pledged to the bank as collateral for the $85,000 loan to Union. Pursuant to an agreement dated June 2, 1969, between Gregg and John J. Hooker, Jr., and Henry W. Hooker, Gregg purchased for $61,662.50 *396 the 25 shares of G-O stock originally issued to Union. Although Gregg executed a promissory note payable to John J. Hooker, Jr., and Henry W. Hooker individually in the amount of $55,496.25 as partial payment for the stock, the records maintained by Union reflect that on June 24, 1969, Union acquired a note receivable executed by Gregg in that amount. Further, these records reflect that also on June 24, 1969, Union acquired an account receivable from Gregg in the amount of $6,166.25. Such account was paid on December 2, 1969, by Gregg, and the payment was deposited in the partnership bank account. As late as March 24, 1970, Union reported this sale to Gregg on its statement of income and expenses accompanying a December 31, 1969, balance sheet submitted to the Credit Department of the Third National Bank. On October 1, 1969, Gregg purchased from petitioner for $93,750 the 37-1/2 shares of G-O stock originally issued to petitioner. No record of this transaction or the one discussed above involving the Hooker brothers was reflected on G-O'sstock record book. On its Federal partnership income tax return filed for the 1969 taxable year, Union reported the June 2, 1969, sale of *397 G-O stock to Gregg as a sale by the partnership, resulting in a loss for that year. The partners deducted their allocable portion of such partnership loss on their individual Federal income tax returns for 1969. In April 1971 an amended partnership return for 1969 was submitted by Union's accountant to Henry W. Hooker for filing, in which the loss incurred from the sale of stock to Gregg was deleted from the computation of Union's taxable income. Subsequently, John J. Hooker, Jr., submitted to an examining agent of the Internal Revenue Service an amended Federal income tax return for 1969, reflecting an ordinary loss emanating from the net operating loss incurred by G-O during 1969, which loss had not been reported in his original return. This amended return was treated by the Internal Revenue Service as a claim for refund which was disallowed by respondent. Henry W. Hooker filed an amended individual Federal income tax return for 1969, reflecting an ordinary loss resulting from the net operating loss incurred by G-O during 1969, which loss had not been reported in his original return. This loss was disallowed by respondent. These disallowances were not contested by John J. Hooker, *398 Jr., or Henry W. Hooker. On September 17, 1970, G-O filed a small business corporation income tax return for the taxable year 1969, reporting a loss of $362,855. In their joint Federal income tax return filed for 1969, petitioners deducted as an ordinary loss the amount of $102,200.28, representing a loss generated by "G-O Corporation" as an electing small business corporation. In the statutory notice of deficiency upon which this case is based, respondent disallowed this claimed loss of $102,200.28 as follows: It has been determined that the Subchapter "S" loss of $102,200.28, claimed from G-O Enterprises, Inc. for the taxable year 1969, is not allowable. The election to become a Subchapter "S" corporation by G-O Enterprises, Inc., was not a valid election since not all shareholders consented to such election and since a partnership, Union Street Investment Company, was a shareholder. In accordance with Code section 1371(a), all shareholders must consent to the election and all shareholders must be individuals. Therefore, your taxable income is increased by $102,200.28. OPINION *399 In order to be eligible to make a valid subchapter S election under section 1372(a), [2]/ a corporation must be a "small business corporation," as defined in section 1371(a), [3] at the time the election is made. Section 1371(a)(2) provides that no such electing corporation shall have as "a shareholder a person * * * who is not an individual." Section 1.1371-1(e), Income Tax Regs., states, in pertinent part, that a "corporation in which any shareholder is a corporation, trust, or partnership does not qualify as a small business corporation." *400 Respondent contends that on January 30, 1969, when G-O filed an election to be taxed as a small business corporation, 25 shares of G-O's stock (or one-fourth of all the outstanding stock) were owned by Union, a partnership. Since a partnership may not be a shareholder in a qualifying subchapter S corporation, respondent argues that G-O was not eligible to make a subchapter S election. On this ground respondent contends that petitioner, an individual shareholder of G-O, was not entitled to deduct his share of G-O's losses for the taxable year 1969 on his Federal income tax return. We agree. Petitioner's right to deduct a share of G-O's losses depends upon whether ownership of the 25 shares of G-O stock was effectively transferred prior to January 30, 1969, from Union to John J. Hooker, Jr., and Henry W. Hooker, two of the partners of Union. Petitioner is no doubt correct in his view that section 1371(a)(2) is concerned with beneficial ownership of stock rather than the dry entries on the corporation's stock record book. [4]/ See Harold C. Kean, 51 T.C. 337, 344 (1968), *401 affd. on this issue 469 F.2d 1183, 1187 (9th Cir. 1972); Alfred N. Hoffman, 47 T.C. 218, 233-234 (1966), affd. per curiam 391 F.2d 930 (5th Cir. 1968). But we are not convinced that beneficial ownership of the stock did not reside in the partnership at the time the election was made. On the records of the corporation, ownership of the 25 shares undisputably remained in the partnership on January 30, 1969. However, since resolution of the issue turns on beneficial ownership, we recognize that the records of the corporation are not necessarily controlling. New stock certificates from some source other than the corporation's stock transfer book were issued in the names of John J. Hooker, Jr., and Henry W. Hooker, but the evidence is not clear when this was done. Frank Woods, who handled the matter, was unwilling (or failed) to testify unequivocally as to when the new certificates were issued. If they were issued before *402 Woods withdrew the pledged shares from the bank on May 2, 1969, there is no explanation why he held them until July 2, 1969, when they were substituted for the original certificate. If the new certificates were issued prior to January 30, 1969, it would seem more reasonable for him to have merely substituted promptly the new certificates for the old one without waiting 2 months.We are not satisfied the new certificates were issued before the crucial date, January 30, 1969. [5]/ *403 Petitioner points to Henry W. Hooker's testimony that he and his brother, John, had an informal understanding permitting each of them to make withdrawals from the partnership as they "saw fit," and they frequently did so. From this testimony we are asked to infer that Henry W. Hooker spoke for both himself and his brother in directing Woods to make the transfer. But Henry could not recall any other withdrawals of stock pursuant to the informal procedures followed in managing the partnership affairs. [7]/ Moreover, all other withdrawals were recorded on the partnership's records and presumably *404 became liabilities of the withdrawing partner to the partnership.But the partnership records did not reflect the distribution or withdrawal of this G-O stock in January 1969 or at any other time. Indeed, it is stipulated that the partnership records reflect only that these 25 shares of G-O stock were acquired September 26, 1967, and deleted June 24, 1969, after they were sold to Gregg. Although Gregg executed a promissory note payable to John J. Hooker, Jr., and Henry W. Hooker individually as partial payment for the stock, Union's records reflect as partnership assets the note and an account receivable given by Gregg as consideration for the stock. Also, when the account receivable was paid by Gregg on December 2, 1969, the payment was deposited in the partnership bank account. [8]/ Consistent with these partnership records, Union reported the stock sale to Gregg on its 1969 partnership tax return. The partners reported the transaction as a sale by the partnership on their 1969 individual income tax returns. As late as March 24, 1970, the *405 partnership reported the sale to Gregg on a statement of income and expenses attached to a December 31, 1969, balance sheet submitted to the Third National Bank. We are, of course, aware that actions taken by or on behalf of small, closely held corporations and family partnerships frequently are not fully documented but, rather, are handled informally. As an example, Gregg's acquisition of 37-1/2 shares of G-O's stock from G & K Enterprises sometime between September 26, 1967, and January 1, 1969, was never reflected on the corporation's stock record book. Yet it is conceded that Gregg individually owned that stock when G-O's subchapter S election was made. However, in the instant case, we do not think that the record, viewed in its entirety, supports a finding that, prior to January 30, 1969, Union transferred the G-O stock to John J. Hooker, Jr., and Henry W. Hooker. We do not base our conclusion upon the absence of any single piece of documentation but upon a careful analysis of all the evidence. The testimony of Woods and Henry W. Hooker indicating that they knew that the transfer of G-O's stock from Union to the Hooker brothers individually was required as a condition *406 to a valid subchapter S election and Henry W. Hooker's instruction to Woods to handle it are simply not enough to show that the transfer was, in fact, made. Too many gaps remain for us to take a leap of faith and conclude that the individuals, John J. Hooker, Jr., and Henry W. Hooker, beneficially owned the disputed 25 shares of stock on January 30, 1969, the date G-O's subchapter S election was made. Since Union, a partnership, rather than the Hooker brothers owned 25 shares of G-O's stock on January 30, 1969, the subchapter S election on that date was ineffective under section 1372(a). Therefore, petitioner is not entitled to deduct any portion of G-O's 1969 losses. Decision will be entered for the respondent. Footnotes
1. /↩ All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted.
2. /SEC. 1372. ELECTION BY SMALL BUSINESS CORPORATION. (a) Eligibility. -- Except as provided in subsection (f), any small business corporation may elect, in accordance with the provisions of this section, not to be subject to the taxes imposed by this chapter. Such election shall be valid only if all persons who are shareholders in such corporation-- (1) on the first day of the first taxable year for which such election is effective, if such election is made on or before such first day, or (2) on the day on which the election is made, if the election is made after such first day, consent to such election. ↩
3. SEC. 1371. DEFINITIONS. (a) Small Business Corporation. --For purposes of this subchapter, the term "small business corporation" means a domestic corporation which is not a member of an affiliated group (as defined in section 1504) and which does not-- (1) have more than 10 shareholders; (2) have as a shareholder a person (other than an estate) who is not an individual; (3) have a nonresident alien as a shareholder; and (4) have more than one class of stock.↩
4. /Sec. 1.1371-1(d), Income Tax Regs.↩, states the test in terms of "who would have to include in gross income dividends distributed with respect to the stock of the corporation."
5. / The record does not contain the faintest suggestion that the following statutory procedure (Tenn. Code Ann. sec. 47-8-405 (1964)) was followed for the replacement of lost shares of stock: 47-8-405. Lost, destoyed and stolen securities. --* * * (2) Where the owner of a security claims that the security has been lost, destoryed or wrongfully taken, the issuer must issue a new security in place of the original security if the owner (a) so requests before the issuer has notice that the security has been acquired by a bona fide purchaser; and (b) files with the issuer a sufficient indemnity bond; and (c) satisfies any other reasonable requirements imposed by the issuer. * * *
Frank Woods testified that he talked with Henry W. Hooker in late 1968 and told him that, as a condition to a valid election, it would be necessary for the partnership to transfer the stock to John J. Hooker, Jr., and Henry W. Hooker individually. Woods further testified that Henry W. Hooker said "consider it done" and "they" would take care of transferring the partnership interest. On the other hand, Henry W. Hooker's testimony, though somewhat ambiguous, indicates he thought Woods was to make the transfer. Thus, there apparently was some misunderstanding as to who would take responsibility for transferring the stock. While John J. Hooker, Jr., signed a subchapter S election consent form, there is nothing in the record to show that he actually knew about the partnership stock ownership problem. Moreover, Eugenia Fort Hooker was never consulted about the transfer and her interests were adversely affected thereby. Petitioner emphasizes that the November 1966 amendment to the partnership agreement refers to Mrs. Hooker as a limited partner, but respondent argues that she was never so qualified under Tennessee law. / Henry W. Hooker testified that he did not know whether a limited partnership certificate was ever executed and recorded. See Tenn. Code Ann. sec. 61-202 (1976).
[6]↩ / Regardless of whether she was a general or limited partner, the assets of the partnership would have been depleted and her interest diluted by the transfer of the G-O stock to the Hooker brothers.Normally, a transfer of stock to only one or two of the partners should be reflected in the partnership's records by adjustments to the capital or other accounts. Such adjustments in the instant case would have prevented the dilution of Mrs. Hooker's interest as a result of a distribution of this stock to the other partners. Nothing like this was done, and complete failure to reflect anywhere in the partnership records the transfer of the stock to the individuals indicates the stock was not, in fact, transferred. 7. / Henry W. Hooker testified: Q. * * * You stated that you and your brother would both make withdrawals when you saw fit out of Union Street Investment Company? A. Yes sir, I did. * * *Q. Do you recall any other withdrawals of stock? A. I'd have to look at the records. I don't have any records--- Q. In other words, this is the only withdrawal of stock that you recall? A. Yes sir.↩
8. /↩ The record does not show whether Gregg paid the note and, if so, whether the proceeds were deposited in the partnership bank account.