FINLEY G. AULD and VIRGINIA AULD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
AULD v. COMMISSIONER
Docket No. 9509-76.
United States Tax Court
T.C. Memo 1978-508; 1978 Tax Ct. Memo LEXIS 8; 37 T.C.M. (CCH) 1851-86; December 26, 1978, Filed Edwin Fradkin,Harvey R. Zeller,John J. O'Toole, and Edwin N. Gross, for the petitioners. Steven I. Klein, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined a deficiency and an addition to tax under section 6653(a), Internal Revenue Code of 1954, [1] for the taxable year 1973 in the respective amounts of $45,428.30 and $2,334.74. The issues for our decision are: (1) Whether petitioners have the burden of proof with respect to the question of whether petitioner's son, Gregory T. Auld, became a shareholder of Teterboro *10 Chrysler-Plymouth, Inc., during 1973; (2) Whether Gregory T. Auld became a nonconsenting shareholder of Teterboro Chrysler-Plymouth, Inc., during 1973 under the provisions of section 1372(e)(1), and thereby terminated the corporation's election to be treated as a subchapter S corporation; and (3) Whether petitioners' underpayment of tax for the taxable year 1973 was due to negligence or intentional disregard of the rules and regulations set forth under section 6653(a). Our decision with respect to issue number 2 will determine whether distributions in the amount of $78,308 made by Teterboro Chrysler-Plymouth, Inc., during 1973 to petitioner are taxable as dividends. FINDINGS OF FACT Finley G. Auld and his wife Virginia Auld, who filed a joint Federal income tax return for the taxable year 1973 with the Internal Revenue Service, resided at Paramus, New Jersey, at the time they filed their petition in the instant case. Mrs. Auld is a party to this action solely because of her filing a joint return with her husband Finley G. Auld, who will be referred to herein as petitioner. From 1963 to present petitioner has been president of Teterboro Chrysler-Plymouth, Inc. (herein *11 referred to as Teterboro). Teterboro is the continuation in corporate form, with only a name change, of what was initially known as Turnpike Chrysler-Plymouth, Inc. (herein referred to as Turnpike). Turnpike was incorporated during 1963 under the laws of the State of Delaware. Its incorporators were employees of Chrysler Corporation. Chrysler Corporation employed petitioner during 1963 when petitioner became president of the corporation as well as manager of this automobile dealership. Petitioner worked for Chrysler Corporation under a stock purchase plan whereby he could purchase Turnpike stock and ultimately become the sole shareholder of Turnpike. On February 5, 1965, petitioner commenced the purchase of Turnpike stock and by April 1971 he became the sole shareholder. Prior to his gaining control the name of the corporation was changed from Turnpike to Teterboro. During the taxable year in issue the board of directors consisted of petitioner, his wife, and an attorney, Mr. Joseph Russo.
For the taxable year 1971 Teterboro filed a corporate income tax return (Form 1120). Petitioner signed this return in his capacity as president when he owned 100 percent of Teterboro stock *12 which was reflected on the corporate return. On January 29, 1972, Teterboro, with the consent of petitioner, filed an election to be taxed as a small business corporation under the provisions of subchapter S of the 1954 Code.Correspondingly, Teterboro filed its corporate return as a small business corporation (Form 1120S) for its taxable year 1972. Petitioner signed this return as president of Teterboro and again the return indicated that petitioner owned 100 percent of Teterboro stock. During 1973 petitioner sought the advice of Mr. Samuel Elblonk, a certified public accountant, on matters concerning the operation of Teterboro. Mr. Elblonk advised petitioner to terminate Teterboro's election under subchapter S and resume Teterboro's status as a regular corporation. To this end Mr. Elblonk prepared a letter for the signature of Gregory T. Auld who was petitioner's son.The letter was addressed to the Internal Revenue Service at Holtsville, New York, and contained the following declaration: Gentlemen: On November 5, 1973, I became a shareholder of Teterboro Chrysler-Plymouth, Inc. and do not commit to the election to have the abovenamed corporation be treated as a small business *13 corporation under section 1372(a) of the Internal Revenue Code. Very truly yours, [signature indicated] Gregory T. Auld, 425 Abbott Road, Paramus, N.J.
After Mr. Elblonk prepared this letter he gave it to petitioner who after reading its content delivered it to his son. His son signed the letter which was then mailed to the Internal Revenue Service which received it on December 29, 1973.Mr. Elblonk also contacted an attorney, Mr. Jack Honart, for the purpose of issuing Teterboro stock to petitioner's son. In spite of these actions petitioner's son never actually received any Teterboro stock and there is nothing to indicate that the corporation authorized such in its corporate minutes. Consistent with the course of conduct by petitioner and Mr. Elblonk, Teterboro filed a corporate income tax return (Form 1120) for its taxable year 1973 as it had done in 1971. [2] Petitioner signed this return but the return did not reflect his percentage ownership in Teterboro. The return did indicate that Teterboro had distributed $78,308 to petitioner during "February 1973" which represented Teterboro's taxable income for 1972 when it was a subchapter S corporation. *14 In addition to the above described action taken by petitioner in an attempt to terminate Teterboro's subchapter S status petitioner filed an Application for Termination (Form 4573) which related to a pension plan adopted by Teterboro on December 17, 1973. The application indicated that petitioner owned 99 percent of Teterboro's stock. On June 20, 1974, Teterboro filed with the Internal Revenue Service for the taxable year 1973 an Annual Employer's Return for Employee's Pension or Profit-Sharing Plans (Form 4848). Petitioner signed this form and indicated on it that Teterboro was a corporation other than a subchapter S corporation. Teterboro continued to file its returns for the taxable years 1974 and 1975 as a regular corporation (Form 1120). The Commissioner in his statutory notice of deficiency determined that the amount of $78,308 received by petitioner during the taxable year 1973 constituted a taxable dividend. He further determined that petitioner received the amount as follows: Amount
Date Received
$ 45,007 4/13/73
28,301 5/10/73
5,000 *
5/11/73
$ 78,308 *15 This determination of dates was contrary to the date on Teterboro's return for 1973 for the distributions which was "during February 1973." For these reasons the Commissioner increased petitioners' taxable income for 1973 by $78,308 due to petitioners' failure to report this amount for the taxable year 1973. In addition the Commissioner asserted a five percent penalty under the provisions of section 6653(a). OPINION The first issue for our decision is whether petitioners have the burden of proving that their son did not become a nonconsenting shareholder of Teterboro for the taxable year 1973. Petitioners contend that respondent has the burden of proof with respect to this issue. Petitioners argue that the statutory notice of deficiency is confined to the determination that petitioner was the recipient of a dividend from Teterboro during 1973. Consequently, petitioners assert that their burden of proof is discharged by a proper showing that throughout the taxable year 1973 Teterboro was a subchapter S corporation. Upon such a showing petitioner takes the position that respondent, who alleged in his answer that petitioner's son was a new shareholder of Teterboro, has the *16 burden of proving that Gregory T. Auld caused Teterboro to lose its subchapter S status by becoming a new shareholder and refusing to consent to Teterboro's election. We disagree with petitioner. Petitioner concedes that the subchapter S status of Teterboro is inherently included in respondent's determination vis a vis his statutory notice of deficiency. In addition petitioner recognized that his burden includes proof that Teterboro's subchapter S status continued during the taxable year 1973.To carry this burden petitioner must demonstrate under the facts of this case that he was the sole shareholder of Teterboro during the entire year of 1973 and thus inferentially negate his son's becoming a shareholder during 1973. Such proof is, in no way, affected by respondent's allegation in his answer.Respondent's allegation does not force petitioner to come forth with evidence which differs from that which would be required to overcome respondent's original determination.Estate of Falese v. Commissioner,58 T.C. 895, 899 (1972). Accordingly, we find that petitioners have the burden of proof with respect to their son becoming a nonconsenting shareholder of Teterboro during *17 1973. The next issue for our decision is whether Gregory T. Auld became a nonconsenting shareholder of Teterboro during 1973 under the provisions of section 1372(e)(1) and thereby terminated the corporation's election to be treated as a subchapter S corporation. Our decision of this issue will determine whether petitioner received a dividend distribution or a distribution of previously taxable income. Petitioner became the sole shareholder of Teterboro during April 1971 and for the taxable year 1971 Teterboro filed a corporate income tax return (Form 1120). On January 29, 1972, it filed its election to be taxed as a small business corporation under the provisions of subchapter S of the 1954 Code. Teterboro had taxable income in the amount of $78,308 for its taxable year 1972 and filed its corporate return (Form 1120S) as a small business corporation. During October 1973 petitioner contacted Mr. Samuel Elblonk for the purpose of obtaining his advice about the operation of the business. Mr. Elblonk advised petitioner that it was not advantageous to operate Teterboro as a subchapter S corporation. With the approval of petitioner Mr. Elblonk proceeded on a course of conduct *18 which would hopefully terminate Teterboro's election. Mr. Elblonk proposed to terminate by issuing stock to petitioners' son who would then refuse to consent to Teterboro's election. To this end he prepared a letter for the son's signature. The contents of the letter included a statement that petitioner's son was a new shareholder of Teterboro and that he did not consent to the subchapter S election. After he prepared the letter Mr. Elblonk delivered it to petitioner who then procurred his son's signature. The letter was mailed to the Internal Revenue Service which received it on December 29, 1973. In conjunction with the letter Mr. Elblonk notified an attorney for the purpose of issuing stock to petitioner's son. This was never accomplished and no official corporate action was taken with regard to issuing stock to petitioner's son. Following these events petitioner in his capacity as president filed the corporate return of Teterboro as a regular corporation for the taxable year 1973. On this return he indicated that he owned 99 percent of Teterboro stock. The return also reflected that petitioner received $78,308 from Teterboro as a distribution of its undistributed taxable *19 income for 1972 during February 1973. The record indicates and the parties do not contest the fact that the distributions were actually made during April and May 1973. The amount of the distribution represented all of Teterboro's taxable income for 1972. Petitioners assert that Teterboro continued to maintain its status as a subchapter S corporation during the entire taxable year 1973 and therefore all distributions made to petitioner during 1973 must be characterized as previously taxed income. [3] Petitioner argues that he was the sole shareholder of Teterboro at all relevant times, irrespective of his goal to terminate Teterboro's status by attempting to make his son a nonconsenting shareholder. For these reasons petitioner takes the position that respondent's characterization of the distributions as a dividend is erroneous. Respondent contends that Gregory T. Auld became a beneficial owner of Teterboro stock during 1973 and because he refused to consent to the election Teterboro's subchapter S status terminated for the entire taxable year of 1973. Sec. 1372(e)(1); sec. 1.1372-3(b), *20 Income Tax Regs. Accordingly, respondent argues that the distribution was made beyond the 2-1/2-month period as set forth in section 1375(f) and, therefore, taxable as a dividend to petitioner. While Gregory T. Auld never actually received stock certificates, respondent contends that this is not a requirement in establishing beneficial ownership and he relies upon Wilson v. Commissioner,560 F.2d 687 (5th Cir. 1977), affg. a Memorandum Opinion of this Court; Kean v. Commissioner,51 T.C. 337 (1971), affd. in part 469 F.2d 1183 (9th Cir. 1972); Hoffman v. Commissioner,47 T.C. 218 (1966), affd. 391 F.2d 930 (5th Cir. 1968). We agree that these cases stand for the proposition that the finding of beneficial ownership is not dependent upon record ownership. However, respondent's reliance is misplaced in the context of the facts in the instant case. The appropriate test is whether the creation of beneficial ownership has economic reality and is consummated by a bona fide transfer of stock from petitioner to his son.Hook v. Commissioner,58 T.C. 267 (1972); Duarte v. Commissioner,44 T.C. 193 (1965); *21 see sec. 1.1373-1(d), Income Tax Regs. In Hook a corporation elected to be treated as a small business corporation for the year 1965 and all subsequent years. However, during 1966, at a time beyond that allowed for a voluntary revocation (section 1372(e)(2)), taxpayer realized that the corporation would have substantial income for the year 1966. Taxpayer's accountant advised him to arrange for a transfer of a portion of his stock. Taxpayer transferred stock to his attorney who in turn, as planned, refused to consent to the corporation's election within the time prescribed by section 1372(e)(1) and section 1.1372-3(b), Income Tax Regs. We held that the transfer of stock to taxpayer's attorney was not bona fide and lacked economic reality. Accordingly, the corporation continued its subchapter S status because taxpayer remained the sole shareholder, irrespective of the fact that his attorney held legal title to the stock until such time that he returned it to taxpayer for no consideration. In Duarte we found that a transfer of stock between taxpayer and his children was not bona fide and lacked economic reality because taxpayer continued to completely control and dominate *22 the activities of the corporation. No bank accounts were established for the children and they received no distributions from the corporation. We, therefore, find that the facts in the instant case are not distinguishable from either Hook or Duarte. While it was petitioner's intention to terminate Teterboro's election he did not accomplish this end. He continued to exercise sole control over the operations of Teterboro. Moreover, petitioner's son did not receive any distributions from Teterboro during 1973 and petitioner did. See Kean,supra at 1187; Hoffman v. Commissioner,47 T.C. 218 (1966), affd. 391 F.2d 930 (5th Cir. 1968); sec. 1.1371-1(d)(1), Income Tax Regs. Based upon the entire record we conclude that petitioners have sustained their burden of proof that Gregory Auld did not become the beneficial owner of Teterboro stock during the taxable year 1973. Correspondingly, we hold that Teterboro continued its status as a subchapter S corporation for the taxable year 1973. Therefore, petitioner received a distribution in the amount of $78,308 during 1973 beyond the 2-1/2 month grace period provided in section 1375(f). Respondent *23 in his amended answer, alleged that in the event we held that Teterboro's subchapter S status did not terminate during 1973, the amount of $3,823 (Teterboro's taxable income for 1973) is includable in petitioners' gross income under either sections 301, 316 or 1373(b). In addition, respondent asserted that $7,355 is includable in petitioners' gross income under section 1379(b)(1). This amount arises from respondent's allegation that during 1973 Teterboro claimed a deduction of $11,331 for contributions to an employment pension plan of which $9,855 was paid on behalf of petitioner. He alleged that petitioner did not include the excess over $2,500 (section 404(a)(1), (2) or (3)) in his gross income for the taxable year 1973. Petitioners concede this. The final issue for our decision is whether petitioners' underpayment of tax for the taxable year 1973 was due to negligence pursuant to section 6653(a). Section 6653 provides that if any part of any underpayment of tax is due to negligence or intentional disregard of rules and regulations, an addition to tax in the amount of five percent of the underpayment will be added to the tax. Respondent's determination of the negligence *24 penalty is presumptively correct and petitioners have the burden of proving such determination to be erroneous. Courtney v. Commissioner,28 T.C. 658 (1957). Petitioners first argue that they are not in a position to argue what acts or conduct respondent relies upon because the nature of the negligent acts are not set forth in either the statutory notice of deficiency or in respondent's opening statement at the time of trial. Petitioners rely upon Kilborn v. Commissioner,29 T.C. 102 (1957), modified on other issues in an unreported District Court decision (5th Cir. 1958), 2 AFTR 2d 5812, 58-2 USTC para. 9847, and presumably take the position that they do not have the burden of proof with respect to this issue. In any vent, their reliance upon Kilborn is erroneous for in Kilborn respondent raised the issue by pleading negligent acts on the part of taxpayer. Nevertheless, during the trial respondent made no mention of the matter and gave no indication as to the basis of his position with respect to negligence.In addition, respondent's brief contained no discussion of the issue. In the instant case respondent determined the *25 addition to tax in his statutory notice of deficiency, asserted his position during the trial, and extensively argued the issue on brief. Petitioner further contends that he placed complete reliance upon his accountant Mr. Elblonk, a certified public accountant in the preparation of his return as well as Teterboro's return for the taxable year 1973. He argues that any act of negligence which might have occurred in the preparation of the returns must be due to the acts of petitioner's accountant. We disagree. This is not a situation which involves a taxpayer relying in good faith on the advice of his accountant. Cf. Inter-American Life Insurance Co. v. Commissioner,56 T.C. 497 (1971), affd. 469 F.2d 697 (9th Cir. 1972); Conlorez Corporation v. Commissioner,51 T.C. 467 (1968). The distribution date as reflected on Teterboro's corporate return for 1973 indicated that petitioner received $78,308 during "February 1973." This date conspicuously falls within the period provided in section 1375(f) which avoids taxation of such distribution. Consistent with this reported date of distribution, petitioner failed to report the amount on *26 his return for 1973. Petitioner now concedes that the distributions took place during April and May 1973, a period beyond that prescribed by section 1375(f). We can conclude from the record that petitioner either misinformed his accountant as to the dates of distribution or that he ignored the date indicated on Teterboro's return. Petitioner did not inform his accountant that the date of distribution indicated on the return, a fact best known by petitioner, was incorrect. Petitioner is under an obligation of filing accurate returns. Bailey v. Commissioner,21 T.C. 678 (1954).He cannot avoid this responsibility by placing it on his accountant. Prichett v. Commissioner,63 T.C. 149, 174 (1974). Therefore, we sustain respondent on this issue. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. Teterboro reported taxable income in the amount of $3,823.↩
*. Indebtedness to corporation canceled.↩
3. Respondent concedes that petitioner is not estopped from taking this positions.↩