CHARLES J. AND MAUDE J. NITSCHE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Nitsche v. Commissioner
Docket No. 1810-76.
United States Tax Court
T.C. Memo 1981-263; 1981 Tax Ct. Memo LEXIS 479; 41 T.C.M. (CCH) 1605; T.C.M. (RIA) 81263; May 28, 1981. Robert M. Tyle, for the petitioners. John D. Steele, Jr., for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Murray H. Falk pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. *481 OPINION OF THE SPECIAL TRIAL JUDGE FALK, Special Trial Judge: Respondent determined deficiencies of $ 305.86, $ 1,745.37, and $198.75, respectively, in petitioners' 1968, 1969, and 1972 federal income taxes. Concessions having been made on both sides, the questions remaining for our determination are: (1) The amount of a casualty loss suffered to petitioners' real property in 1972, deductible on their 1971 federal income tax return under the provisions of section 165(h), and (2) whether and, if so, in what amounts petitioners are entitled to deductions in excess of the amounts determined by respondent for 1972 for (a) gasoline and real estate taxes under section 164 and (b) charitable contributions under section 170. Whether petitioners are entitled under section 172 to a net operating loss deduction for 1968 in an mount in excess of that determined by respondent and to any net operating loss deduction for 1969, and, if so, the amounts thereof, turn upon our resolution of the first mentioned issue, above. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. Petitioners, husband and wife, filed their original and amended joint federal *482 income tax returns for 1968, 1969, and 1971 and their joint return for 1972 with the Internal Revenue Service Center at Andover, Massachusetts. At the time they filed their petition herein, they resided at Corning, New York. Issue 1. Casualty Loss. Petitiners purchased a one and a half story Cape Cod house in Corning in 1947 for $ 8,700. They paid closing costs of approximately $ 300 upon its purchase. Prior to the events hereinafter described they made capital improvements to the property which cost them approximately $ 9,000. Petitioners used the property as their residence. In June of 1972, the property and its contents were damaged by a flood. Water rose to a level of 8 to 10 inches on the top floor. The recreation room and everything else in the basement was ruined. The hardwood flooring on both floors buckled. All the interior walls and insulation were ruined. Everything in the kitchen was destroyed. The exterior siding of the house and garage and foundation of the house were broken. The garage tilted and was coated with a tar-like substance. Petitioners expended approximately $ 10,825 to make repairs to the realty (other than expenses for carpeting and a *483 furnace, the losses of which were reported as personalty). Petitioners put in over 2,800 hours of their own labor into restoring the property. The repairs restored the property to essentially as good condition as it was immediately prior to the flood, although some items, i.e., aluminum siding and kitchen cabinets, may be superior to those which they replaced and others, i.e., walls, may be inferior and some of the damage, i.e., to the garage, were not repaired. The parties are in agreement that the loss to petitioners' personalty was $ 15,072.80. Petitioners received a disaster loan from the Small Business Administration (hereinafter referred to as the SBA), repayment of $ 5,000 of which was subsequently forgiven. Petitioners now concede that the amount of their casualty loss should be reduced by $ 5,000 by reason of that forgiveness. The fair market value of the realty was $ 20,000 immediately before the flood and $ 7,000 immediately thereafter. Petitioners filed an amended 1971 federal income tax return, see sec. 165(h), on which they claimed a casualty loss deduction of $ 34,720.80, as follows: Damage to realty
$ 19,748.00
Damage to personalty
15,072.80
Total
$ 34,820.80
Less sec. 165(c)(3) limitation
100.00
Loss claimed
$ 34,720.80
*484 Respondent determined that petitioners' deductible loss was $ 20,139.31, as follows: Loss to realty
$ 10,166.51
Loss to personalty
15,072.80
Total
$ 25,239.31
Less: Forgiveness of SBA loan $ 5,000
Sec. 165(c)(3) limitation 100
5,100.00
Loss determined
$ 20,139.31
Issue 2. Gasoline and Real Estate Taxes and Charitable Contributions. Petitioners drove their automobile 18,000 miles in 1972. They paid real estate taxes in the sum of $ 311.39. In addition to church and other charitable contributions for which petitioners furnished documentary evidence ($ 498), they made qualifying charitable contributions in the sum of $ 100. OPINION Issue 1. Casualty Loss. Section 165 allows a deduction to individuals for losses not compensated for by insurance or otherwise suffered upon the damage to or destruction of nonbusiness property by reason of fire, storm, shipwreck or other casualty or from theft to the extent that each such loss exceeds $ 100. Sec. 165(c)(3). The proper measure of the loss sustained is the difference between the fair market value of the property immediately before the casualty and its fair market value immediately thereafter, *485 but not to exceed its adjusted basis. See Helvering v. Owens, 305 U.S. 468 (1939); Millsap v. Commissioner, 46 T.C. 751, 759 (1966), affd. 387 F.2d 420 (8th Cir. 1968); sec. 1.165-7(b)(1), Income Tax Regs. Physical damage to property caused by a flood is clearly a casualty within the purview of section 165(c)(3), and respondent concedes that petitioners suffered some such damage which qualified for deduction on their 1971 federal income tax return under the provisions of section 165(h). Respondent does not contest petitioners' claim of the value of their personalty lost in the flood. Petitiners now concede that the amount of the loss should be reduced by $ 5,000, the amount of the SBA loan forgiveness. The only dispute, then, is the amount of the loss to petitioners' realty. The burden of proof rests with petitioners. Pfalzgraf v. Commissioner, 67 T.C. 784, 787 (1977); Axelrod v. Commissioner, 56 T.C. 248, 256 (1971). To establish the amount of the casualty loss, the relevant fair market values "shall generally be ascertained by competent appraisal." Sec. 1.165-7(a)(2)(i), Income Tax Regs. Petitioners *486 obtained appraisals of the fair market value of the house before and after the flood from two local real estate agents. The testimony of neither is before the Court and their appraisal reports do not contain any data to support their conclusions. The circumstances are such here that we draw no inference from the absence of their testimony that the testimony of these persons would be unfavorable to petitoiners, [3] but neither can we give their appraisals any weight. The opinion of a landowner as to the value of his or her property is admissible in evidence without further qualification because of the owner's special relationship to that property. But, we are not bound to accept that testimony at face value, even though it is uncontradicted, if it appears to be improbable, unreasonable, or offered solely to serve the self-interests *487 of the taxpayer. While the owners of property are competent to testify as to its value, the weight to be given their testimony will depend upon their knowledge, experience, method of valuation, and other relevant considerations. Petitioner Charles J. Nitsche testified that the house had a fair market value of $ 22,000 immediately prior to the flood. He had no opinion as to its fair market value immediately after the flood. Although his opinion of the property's pre-casualty value seems generally well informed and reliable, given the limitations of his knowledge of appraisal methods and his self-interest in establishing a high value, we have found as a fact that the fair market value of the property immediately before the flood was $ 20,000. Keeping in mind that petitioners expended approximately $ 10,825 to make repairs which have restored the property to essentially as good condition as it was immediately before the flood, with the description of the damage and all the other evidence in the record before us, and in light of the admonitions of Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930), we have found as a fact that the fair market value of the realty was *488 $ 7,000 immediately after the flood. Accordingly, we find that petitioners suffered a loss to their realty in the amount of $ 13,000 before taking into account the SBA loan forgiveness and the $ 100 limitation of section 165(c)(3). The adjusted basis of the property in petitioners' hands exceeded that amount. Sec. 1011(a). We hold that petitioners are entitled to a deduction under section 165(c)(3) in the amount of $ 22,972.80 for 1971. Issue 2. Gasoline and Real Estate Taxes and Charitable Contributions. This issue presents purely questions of fact. Based upon all the evidence and making as close approximations as we can, but bearing heavily upon petitioners, whose inexactitude is of their own making, Cohan v. Commissioner, supra, we have found as facts that petitioners drove their automobile 18,000 miles in 1972 and that they made charitable contributions of $ 100 in excess of the amount determined by respondent. The deduction to which they are entitled for gasoline taxes paid as calculated from the State Gasoline Tax Table for 1972 is $ 104. In the matter of petitioners' real estate taxes, they do not rely upon evidence from which we can make *489 estimates, but, rather, upon documentary evidence which establishes only that they paid $ 311.39 in 1972. In accordance with the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to this case.
3. Petitioners unsuccessfully attempted to obtain the testimony of both persons. Their failure to appear as witnesses, therefore, is not unexplained and the "absent witness" rule (see Kean v. Commissioner, 51 T.C. 337, 343-344 (1968), affd. on this issue 469 F.2d 1183, 1187-1188↩ (9th Cir. 1972)) is not applicable here.