GEORGE H. AND ANN K. JAMISON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jamison v. Commissioner
Docket No. 7063-76.
United States Tax Court
T.C. Memo 1981-262; 1981 Tax Ct. Memo LEXIS 478; 41 T.C.M. (CCH) 1603; T.C.M. (RIA) 81262; May 28, 1981. Robert M. Tyle, for the petitioners. David R. Smith, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Murray H. Falk pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL *480 TRIAL JUDGE FALK, Special Trial Judge: Respondent determined a $ 4,432.89 deficiency in petitioners' 1973 federal income tax. The issues presented are whether and, if so, to what extent petitioners are entitled under section 172 to a net operating loss carryover deduction for 1973. [3] Resolution of the issues turn upon the amount of a loss arising from a flood suffered to petitioners' property in 1972 deductible under section 165(c). FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. Petitioners, husband and wife, filed their joint federal income tax return for the year at issue with the Internal Revenue Service Center at Andover, Massachusetts. At the time they filed the petition herein, they resided at Corning, New York. Petitioners purchased a two-story house in Corning in June of 1965 for approximately $ 15,750. They paid closing costs of approximately $ 275 upon its purchase. Petitioners used the first story of the house as their personal residence and rented out the second story. Prior *481 to the events hereinafter described, petitioners made capital improvements to the house which cost them approximately $ 8,100. Some of the cost of the house and of the improvements was allocated to the rental unit and, on their federal income tax returns for years prior to 1972, petitioners had claimed depreciation deductions in the sum of $ 2,471.21 in respect thereof. On June 23, 1972, a flood struck the Corning area causing damage to petitioners' house and the personal property contained therein. Flood waters rose to approximately eight feet on the first floor; nearly to the first floor ceilings. Outside, the yard was littered with mud and debris, the driveway buckled in some spots, plants were ruined, the aluminum siding on the house was stained and dented, paneling on the back patio was stained, the top of the foundation was damaged, and windows were broken in the garage. In the cellar, an interior wall was partly destroyed, holes were made in the foundation walls, windows were broken, the furnace was ruined, and electrical wiring and the fuse box were damaged. On the first floor, the hardwood floors buckled, the walls were damaged, the kitchen paneling and cabinets were *482 ruined. Mud and slime covered everything. Petitioners spent approximately $ 14,500 for labor and materials to repair the damage, which repairs have not restored it to as good condition as it was in before the flood. The aluminum siding is still dented and stained, the cellar walls have not been repaired, doors and cabinets were replaced with less valuable ones, the hardwood flooring was replaced with particle board, interior walls on the second story are cracked, and trees in the yards are denuded to a height of 10 1/2 feet. Petitioners' home contained thousands of items of personal use and collectibles at the time of the flood, including clothing, appliances, furniture, furnishings, antiques, a doll collection, a button collection, a stamp collection, a picture postcard collection, two record collections, a collection of campaign memorabilia, a coin collection, a token collection, a china collection, a souvenir glass collection, and a collection of quilts. most of the items were lost or ruined in the flood, but some had salvage value. On August 14, 1972, petitioners applied to the Small Business Administration (hereinafter referred to as the SBA) for a disaster loan, claiming *483 a loss of $ 71,131; $ 14,293 to realty and $ 56,838 to personalty. Petitioners received from the SBA a disaster loan in the amount of $ 70,945.55, of which repayment of $ 5,000 was immediately forgiven. The loan was broken down by the SBA as follows: Damage to real estate
$ 14,407.55
Damage to personal property
56,538.00
Total
$ 70,945.55
On their amended joint 1971 federal income tax return, petitioners claimed a casualty loss deduction in the amount of $ 104,723.11, as follows: Realty
$ 26,130.00
Personalty
78,693.11
Total
$ 104,823.11
Less sec. 165(c)(3) limitation
100.00
Deduction claimed
$ 104,723.11
Respondent determined the correct amount of the deduction to be $ 79,730.44, as follows: Realty
$ 15,000.00
Personalty
69,830.44
Total
$ 84,830.44
Less: SBA loan forgiveness $ 5,000
Sec. 165(c)(3) limitation 100
Total
5,100.00
Deduction determined
$ 79,730.44
Petitioners now concede that the amount of the loss as claimed should be reduced by $ 5,000; i.e., the amount of the SBA indebtedness which was forgiven. OPINION Section 165(a) allows a deduction for any loss sustained during the taxable year *484 and not compensated for by insurance or otherwise. In the case of individuals the allowable loss with respect to property not connected with a trade or business is limited to such as arise from fire, storm, shipwreck, or other casualty or from theft and, then, only to the extent that each loss exceeds $ 100. Sec. 165(c)(3). It is not disputed that in 1972 petitioners suffered a loss within the purview of section 165(c) which qualified for deduction on their 1971 federal income tax return under the provisions of section 165(h). Petitioners now concede that the amount of their loss should be reduced by $ 5,000, the amount of the SBA loan forgiveness. The only question, then, is the amount of the damage to petitioners' property suffered as the result of the storm. That issue is essentially factual, and petitioners have the burden of proof. Pfalzgraf v. Commissioner, 67 T.C. 784, 787 (1977); Axelrod v. Commissioner, 56 T.C. 248, 256 (1971). "The proper measure of the loss sustained has generally been said to be the difference between the fair market value of the property immediately before the casualty and its fair market value immediately thereafter, *485 but not exceeding its adjusted basis." Lamphere v. Commissioner, 70 T.C. 391, 395 (1978). To establish the amount of the loss, the relevant fair market values "shall generally be ascertained by competent appraisal." Sec. 1.165-7(a)(2)(i), Income Tax Regs. After the flood, petitioners obtained appraisals of the fair market values of their realty before and after the flood from two local real estate agents. The testimony of neither is before the Court and their appraisal reports do not state on what method or methods they were based. The circumstances are such here that we draw no inference from the absence of their testimony that the testimony of these persons would be unfavorable to petitioners, [4] but neither can we give their appraisals any weight. They offered no appraisal of their personalty. The opinion of *486 an owner as to the value of his or her property is admissible in evidence without further qualification because of the owner's special relationship to that property, but we are not bound to accept that testimony at face value, even though it is uncontradicted, if it appears to be improbable, unreasonable, or offered solely to serve the self-interests of the taxpayer. While the owners of property are competent to testify as to its value, the weight to be given their testimony will depend upon their knowledge, experience, method of valuation, and other relevant considerations. Petitiners attempted to establish the pre-casualty and post-casualty fair market values of their realty and personalty through the testimony of petitioner George H. Jamison. His general and conclusory statements, however, are of no probative value. He stated that his pre-casualty valuation of the realty was based upon sales of other houses in the neighborhood, but he did not specify what properties were sold, in what respects they were comparable, or for how much they were sold. He gave no opinion as to the realty's post-casualty fair market value other than to say that he would have taken "almost anything" *487 someone would have offered. With regard to the personalty, his valuations were conclusory and without any foundation upon which his accuracy could be evaluated. Such testimony fails to establish any basis upon which we can determine fair market values. The most persuasive evidence here of the amount of the loss are petitioners' SBA loan application and the SBA's loan approval. They were made approximately two months after the flood, a period which permitted thoughtful consideration and, yet, sufficiently close to the events that all of the facts could be fresh in mind. We are also mindful of the fact that petitioners actually expended approximately $ 14,500 for repairs to the realty. We cannot say on this record that petitioners have overcome the presumed correctness of respondent's determination, which is, with respect to both the realty and the personality, in excess of the amounts established by that evidence. See Welch v. Helvering, 290 U.S. 111 (1933). Petitioners having failed to carry their burden of proof, respondent's determination must be sustained. Rule 142(a), Tax Court Rules of Practice and Procedure.
In accordance with the foregoing, Decision *488 will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to this case.
3. The amount of the medical expense deduction allowable under section 213 for 1973 turns on our resolution on the primary issues.↩
4. Petitiners unsuccessfully attempted to obtain the testimony of both persons. Their failure to appear as witnesses, therefore, is not unexplained and the "absent witness" rule (see Kean v. Commissioner, 51 T.C. 337, 343-344 (1968), affd. on this issue 469 F.2d 1183, 1187-1188↩ (9th Cir. 1972)) is not applicable here.