ROBERT D. AND VIVIAN G. MASON, Petitioners v. COMMISSIONER OF INTERNATIONAL REVENUE, Respondent
Mason v. Commissioner
Docket No. 1816-76.
United States Tax Court
T.C. Memo 1981-267; 1981 Tax Ct. Memo LEXIS 483; 41 T.C.M. (CCH) 1618; T.C.M. (RIA) 81267; May 28, 1981. Robert M. Tyle, for the petitioners. Anthony M. *484 Bruce, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Murray H. Falk pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE FALK, Special Trial Judge: Respondent determined deficiencies of $ 1,581.87, $ 2,431.00, $ 1,141.41, and $ 555.03, respectively, in petitioners' 1968, 1969, 1970, and 1972 federal income taxes. Disputes regarding other adjustments made in the notice of deficiencies having been resolved by agreement of the parties, the sole issue remaining for our determination is the amount of a *485 casualty loss which petitioners suffered in 1972 which they claimed on an amended federal income tax return for 1971 under the provisions of section 165(h). Whether and, if so, in what amounts petitioners are entitled to net operating loss deductions for 1968, 1969, 1970, and 1972 turn upon our resolution of that issue. FINDINGS OF FACT Some of the facts have been stipulated, and they are so found. Petitioners, husband and wife, filed their original and amended joint federal income tax returns for 1968, 1969, 1970, and 1971 and their joint federal income tax return for 1972 with the Internal Revenue Service Center at Andover, Massachusetts. At the time they filed their petition herein, they resided at Painted Post, New York. Petitioners purchased a two-story house in Painted Post in July of 1970 for $ 24,500. They paid closing costs of $ 853 upon its purchase. Prior to the events hereinafter described, they made capital improvements to the property which cost them approximately $ 2,700. Petitioners used the property as their personal residence. On June 23, 1972, flood waters spawned by Hurricane Agnes flooded the first floor of petitioners' residence to a depth of *486 approximately 4 1/2 feet [3] causing structural damage and damaging and destroying personal property located on the first floor and in the basement. The interior of the first floor had to be gutted and completely rebuilt. Everything in the basement was ruined. In the process of restoring the first floor, petitioners used the second story to store damaged furniture and furnishings, causing extensive soiling of the carpeting and damage to the walls on the second story. Trees and shrubbery on the lot were destroyed and holes gouged in the land. The driveway was broken up. Shingling on the outside of the house was broken. Windows in the basement and windows and screens on the first floor were broken. Petitioners spent approximately $ 13,000 to make repairs to the realty. Petitioner Robert D. Mason did much of the work himself over a period of about a year. At the time of the trial, the heating system still did not operate as well as it did before the flood, some of the workmanship on the interior walls was inferior to that previous to the flood, the driveway shows cracks after having been repaired, paint peels off the exterior trim, and the basement gets wet in heavy rains. The fair *487 market value of the realty was $ 27,000 before the flood and $ 12,000 immediately thereafter. Its basis in petitioners' hands exceeded $ 15,000. Petitioners lost a great deal of personal property in the flood. Much of their furniture and furnishings was less than two years old. On their application for a loan from the Small Business Administration (hereinafter referred to as the SBA), petitioners claimed that their loss of personalty was $ 13,850, not including automobiles (the loss of which was covered by comprehensive insurance). Many items of small value were not included on that application. Petitioners received a disaster loan from the SBA, repayment of $ 5,000 of which was forgiven. On their amended 1971 joint federal income tax return petitioners *488 claimed a casualty loss deduction in the amount of $ 48,907.90, consisting of $ 27,000 loss to their realty and $ 21,907 loss to their personalty, less the $ 100 limitation of section 165(c)(3). Respondent determined that the proper amount of the deduction is $ 17,890.38; $ 11,440.38 loss to realty and $ 11,550 to personalty, less the $ 100 section 165(c)(3) limitation and the $ 5,000 SBA loan forgiveness. Petitioners now agree with the adjustment in respect of the reduction for the SBA loan forgiveness. OPINION Section 165(a) allows a deduction for any loss sustained during the taxable year and not compensated for by insurance or otherwise. In the case of individuals the allowable loss with respect to property not connected with a trade or business is limited to such as arise from fire, storm, shipwreck, or other casualty or from theft and, then, only to the extent that each loss exceeds $ 100. Sec. 165(c)(3). It is not disputed that in 1972 petitioners suffered a loss within the purview of section 165(c) which qualified for deduction on their 1971 federal income tax return under the provisions of section 165(h). Petitioners now concede that the amount of their loss should *489 be reduced by $ 5,000, the amount of the SBA loan forgiveness. The only question, then, is the amount of the damage to petitioners' property suffered as the result of the storm. That issue is essentially factual, and petitioners have the burden of proof. Pfalzgraf v. Commissioner, 67 T.C. 784, 787 (1977); Axelrod v. Commissioner, 56 T.C. 248, 256 (1971). "The proper measure of the loss sustained has generally been said to be the difference between the fair market value of the property immediately before the casualty and its fair market value immediately thereafter, but not exceeding its adjusted basis." Lamphere v. Commissioner, 70 T.C. 391, 395 (1978). To establish the amount of the loss, the relevant fair market values "shall generally be ascertained by competent appraisal." Sec. 1.165-7(a)(2)(i), Income Tax Regs. After the flood, petitioners obtained appraisals of the fair market values of their realty before and after the flood from two local real estate agents. The testimony of neither is before the Court and their appraisal reports do not state on what method or methods they were based. The circumstances are such here that *490 we draw no inference from the absence of their testimony that the testimony of these persons would be unfavorable to petitioners, [4] but neither can we give their appraisals any weight. They offered no appraisal of their personalty. The opinion of an owner as to the value of his or her property is admissible in evidence without further qualification because of the owner's special relationship to that property, but we are not bound to accept that testimony at face value, even though it is uncontradicted, if it appears to be improbable, unreasonable, or offered solely to serve the self-interests of the taxpayer. While the owners of property are competent to testify as to its value, the weight to be given their testimony will depend upon their knowledge, experience, method of valuation, and other relevant considerations. Petitioners' *491 home was in an area being developed shortly before the flood with homes nearly identical to their's. Petitioner Robert D. Mason's testimony that homes comparable to his were selling for $ 27,000 in the area immediately before the flood seems well informed and reliable. Accordingly, we have found as a fact that the fair market value of petitioners' home was $ 27,000 immediately before the flood. His testimony that the house was worthless immediately after the flood is less credible. He recognizes that the land, itself, had a value of $ 2,000 to $ 3,000 immediately after the flood. Further, the property was restored to nearly as good condition as it was in before the flood by the expenditure of approximately $ 13,000. The matter is not susceptible to precise determination on the record before us, but doing the best we can with the materials before us, see Heyn v. Commissioner, 46 T.C. 302, 310 (1966), we have found that the house had a fair market value of $ 12,000 immediately after the flood, establishing a $ 15,000 loss in value due to the flood. Petitioner Robert D. Mason's testimony regarding the cost and value of the items of personalty lost in the flood is *492 too general and conclusory to be of much probative value. The most persuasive evidence of the value of the loss to petitioners' personalty is the SBA loan application they made shortly after the flood. Keeping in mind that the application did not include many items of small value, we find that the loss to petitioners' personalty was $ 16,000 and that its basis was at least equal to that amount. Thus, petitioners' casualty loss deductible on their 1971 return was $ 25,900. In accordance with the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to this case.
3. The stipulation of facts filed herein by the parties uses the figure 4 1/2 feet. In testimony at the trial of the case, petitioner Robert D. Mason used the figure 7 feet, being "two steps from the second floor." We believe that the effect of the difference is minor, but to the extent that it has a bearing upon the outcome, we rely upon the parties' stipulation. Rule 91(e), Tax Court Rules of Practice and Procedure.↩
4. Petitioners unsuccessfully attempted to obtain the testimony of both persons. Their failure to appear as witnesses, therefore, is not unexplained and the "absent witness" rule (see Kean v. Commissioner, 51 T.C. 337, 343-344 (1968), affd. on this issue 469 F.2d 1183, 1187-1188↩ (9th Cir. 1972)), is not applicable here.