CLARENCE R. AND HELEN D. HOWARD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Howard v. Commissioner
Docket No. 1820-76.
United States Tax Court
T.C. Memo 1981-271; 1981 Tax Ct. Memo LEXIS 468; 42 T.C.M. (CCH) 3; T.C.M. (RIA) 81271; June 1, 1981. Robert M. Tyle, for the petitioners. Anthony M. Bruce, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Murray H. Falk pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE FALK, Special Trial Judge: Respondent determined deficiencies of $ 967.02, $ 486.22, and $ 805.92, respectively, in petitioners' 1969, 1970, and 1972 federal income taxes. Concessions having been made on both sides, the sole issue remaining for decision is the amount *470 of the loss in 1972 arising from flood damage to a house owned by petitioners so as to give rise to a deduction under section 165 for 1972 and net operating loss deductions under section 172 for 1969 and 1970. FINDINGS OF FACT Some of the facts have been stipulated, and they are so found. Petitioners, husband and wife, filed their joint federal income tax returns for the years at issue with the Internal Revenue Service Center at Andover, Massachusetts. At the time they filed their petition herein, they resided at Corning, New York. Petitioners purchased a house in Corning, New York, in 1954 for $ 8,300. They paid closing costs of $ 101 upon its purchase. Prior to the events hereinafter described they made capital improvements to the property which cost them approximately $ 4,500. Petitioners used the property as their personal residence. On June 23, 1972, flood waters caused by Hurricane Agns flooded petitioners' residence to a depth of approximately 3 1/2 feet on the first floor. Outside front and back steps washed away and the front porch was weakened. Gravel on the driveway washed away. The yard was littered with silt and debris. Mortar washed out of one of *471 the stone foundation walls, leaving a large crack. The furnance was ruined. The floor on the first story of the house buckled. Walls, insulation, and the bottom kitchen cabinets of the first floor were soaked and ruined to a height of four feet. Everything in the basement and on the first floor was muddy. After the flood, petitioners, their five sons and another young man who lived with them cleaned up the mess and made repairs. The kitchen cupboards have not been restored to as good condition as they were in before the flood and some walls are still cracked. On the other hand, the new furnance installed after the flood is better than the furnace which was ruined. Petitioners spent $ 5,300 for materials to make the repairs. Over 3,000 hours of labor also went into making the repairs. Petitioners received a disaster loan in several increments from the Small Business Administration (SBA) in the sum of $ 11,800. Of that amount, $ 4,800 was for assumption of petitioners' mortgage. The SBA forgave repayment of $ 5,000 of the loan. On their 1972 federal income tax return petitioners claimed a casualty loss deduction of $ 21,310.29, as follows: Damage to realty
$ 17,800.00
Damage to personalty
3,610.29
Total damage
$ 21,410.29
Less sec. 165(c)(3) limitation
100.00
$ 21,310.29
*472 Respondent determined that petitioners were entitled to a deduction of $ 4,098.79, as follows: Structural damage
$ 5,588.50
Personal property damage
3,610.29
Total damage
$ 9,198.79
Less: SBA loan forgiveness
$ 5,000
Sec. 165(c)(3) limitation
100
5,100.00
$ 4,098.79
Petitioners now concede that the amount of their claimed loss should be reduced by $ 5,000; i.e., the amount of the SBA indebtedness forgiven. OPINION Section 165(a) allows a deduction for any loss sustained during the taxable year and not compensated for by insurance or otherwise. In the case of individuals the allowable loss with respect to property not connected with a trade or business is limited to such as arise from fire, storm, shipwreck, or other casualty or from theft and, then, only to the extent that each loss exceeds $ 100. Sec. 165(c)(3). It is not disputed that in 1972 petitioners suffered a loss of property not connected with a trade or business and that such loss arose from a storm within the purview of section 165(c)(3). Respondent does not contest the amount claimed by petitioners for their personalty lost in the flood. Petitioners now concede that the amount *473 of their loss should be reduced by $ 5,000, the amount of the SBA loan forgiveness. The only question, then, is the amount of the damage to petitioners' real property suffered as the result of the flood. That issue is essentially factual, and petitioners have the burden of proof. Pfalzgraf v. Commissioner, 67 T.C. 784, 787 (1977); Axelrod v. Commissioner, 56 T.C. 248, 256 (1971). "The proper measure of the loss sustained has generally been said to be the difference between the fair market value of the property immediately before the casualty and its fair market value immediately thereafter, but not exceeding its adjusted basis." Lamphere v. Commissioner, 70 T.C. 391, 395 (1978). On the meager record before us it is a close question whether petitioners have provided sufficient evidence to overcome the presumed correctness of respondent's determination. Yet, doing the best we can with the materials before us, see Heyn v. Commissioner, 46 T.C. 302, 310 (1966), we find that petitioners sustained a loss of $ 8,000 to their realty as a result of the flood (before reduction on account of the SBA loan forgiveness and the *474 statutory $ 100 limitation of section 165(c)(3)). Accordingly, we hold that they are entitled to a deduction under section 165 in the amount of $ 6,510.29 for 1972. That amount being less than the maximum deduction applicable to 1972, respondent's disallowance of a net operating loss deduction under section 172 for 1969 and 1970 is sustained. To establish the amount of the loss, the relevant fair market values "shall generally be ascertained by competent appraisal." Sec. 1.165-7(a)(2)(i), Income Tax Regs. After the flood, petitioners obtained appraisals of the fair market value of the house before and after the flood from two local real estate agents. The testimony of neither is before the Court and their appraisal reports do not state on what method or methods they were based. The circumstances are such here that we draw no inference from the absence of their testimony that the testimony of these persons would be unfavorable to petitioners, [3] but neither can we give their appraisals any weight. *475 The opinion of a landowner as to the value of his or her property is admissible in evidence without further qualification because of the owner's special relationship to that property. but, we are not bound to accept that testimony at face value, even though it is uncontradicted, if it appears to be improbable, unreasonable, or offered solely to serve the self-interests of the taxpayer. While the owners of property are competent to testify as to its value, the weight to be given their testimony will depend upon their knowledge, experience, method of valuation, and other relevant considerations. The only evidence of the property's pre-casualty and post-casualty values was offered through the testimony of petitioner Clarence R. Howard. He testified that he believed the residence had a fair market value of $ 17,800 immediately before the flood. Other than the appraisals of the real estate agents whose opinions are not supported by any evidence before us, he claims to base his estimate upon the offering prices of comparable properties advertised for sale in the newspaper. He gave no specifics as to the points of comparability and, hence, has failed to persuade us that the properties *476 to which he refers were truly comparable. Further, offering prices cannot form the basis of an appraisal. All in all, the evidence is insufficient to establish the fair market value of the property before the flood. Left as we are, then, with only the evidence that it cost $ 5,300 to repair the property, that the repairs cared for more than the damage done by the flood in respect of the furnace and failed to cure it in respect of the cracked walls and kitchen cupboards, and that something in excess of 3,000 hours was spent to clean up and repair the damage to the property, we estimate that its fair market value was reduced by $ 8,000 as a result of the flood. See Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930); Heyn v. Commissioner, supra. Its basis exceeded that amount. See sec. 1012. In accordance with the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to this case.
3. Petitioners unsuccessfully attempted to obtain the testimony of both persons. Their failure to appear as witnesses, therefore, is not unexplained and the "absent witness" rule (see Kean v. Commissioner, 51 T.C. 337, 343-344 (1968), affd. on this issue 469 F.2d 1183, 1187-1188↩ (9th Cir. 1972)) is not applicable here.