THOMAS R. AND HELEN G. O'ROURKE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
O'Rourke v. Commissioner
Docket No. 1925-76.
United States Tax Court
T.C. Memo 1981-279; 1981 Tax Ct. Memo LEXIS 466; 42 T.C.M. (CCH) 25; T.C.M. (RIA) 81279; June 2, 1981. Robert M. Tyle, for the petitioners. Anthony M. Bruce, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Murray H. Falk pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. *467 OPINION OF THE SPECIAL TRIAL JUDGE FALK, Special Trial Judge: Respondent determined a $ 1,174.64 deficiency in petitioners' 1972 federal income tax. Concessions having been made on both sides, the sole question remaining for our determination is the amount of a casualty loss suffered to petitioners' real property in 1972. FINDING OF FACT Some of the facts have been stipulated, and those facts are so found. Petitioners, husband and wife, filed their joint federal income tax return for 1972 with the Internal Revenue Service Center at Andover, Massachusetts. At the time they filed their petition herein, they resided at Painted Post, New York. Petitioners had a two-story, 6 room house constructed for them in Painted Post in 1954 for approximately $ 16,400. Prior to the events hereinafter described they made capital improvements to the property and the property had a cost basis in petitioners' hands of approximately $ 18,400. Petitioners used the property as their residence. On June 23, 1972, the basement of petitioners' home was flooded to a depth of 50 inches by floodwaters spawned by Hurricane Agnes. Shelving and paneling in the basement were ruined. Ninety *468 percent of the floor tiles and everything else in the basement were destroyed. A hole was caused in the cellar floor. The trees on the property were damages and the shrubs were devastated. The yard was littered with debris. Petitioners expended approximately $ 1,700 to $ 1,800 to make repairs to the realty. The shrubs have not been replaced and the paint on the house continues to peel. Petitioners put in over 800 hours of their own labor into restoring the property. The parties are in agreement that the loss to petitioners' personalty was $ 3,493.09. Petitioners received a disaster loan from the Small Business Administration (hereinafter referred to as the SBA), repayment of $ 4,600 of which was subsequently forgiven. The parties now agree that the amount of petitioners' casualty loss should be reduced by $ 4,600 by reason of that forgiveness. The fair market value of the realty decreased $ 2,000 by reason of the damage caused by the flood. On their 1972 federal income tax return, petitioners claimed a casualty loss deduction of $ 8,506.28, as follows: Damage to realty
$ 4,500.00
Damage to personalty
4,106.28
Total
$ 8,606.28
Less sec. 165(c)(3) limitation
100.00
Loss claimed
$ 8,506.28
*469 Respondent determined that petitioners had no deductible loss, as follows: Loss to realty
$ 1,300.40
Loss to personalty
3,493.09
Total
$ 4,793.09
Less: Forgiveness of SBA loan
$ 4,600
Sec. 165(c)(3) limitation
100
5,000.00
Loss determined
0
OPINION Section 165 allows a deduction to individuals for losses not compensated for by insurance or otherwise suffered upon the damage to or destruction or nonbusiness property by reason of fire, storm, shipwreck or other casualty or from theft to the extent that each such loss exceeds $ 100. Sec. 165(c)(3). The proper measure of the loss sustained is the difference between the fair market value of the property immediately before the casualty and its fair market value immediately thereafter, but not to exceed its adjusted basis. See Helvering v. Owens, 305 U.S. 468 (1939); Millsap v. Commissioner, 46 T.C. 751, 759 (1966), affd. 387 F.2d 420 (8th Cir. 1968); sec. 1.165-7(b)(1), Income Tax Regs. Physical damage to property caused by a flood is clearly a casualty within the purview of section 165(c)(3), and respondent concedes that petitioners suffered *470 some such damage. The parties agree as to the value of petitioners' personalty lost in the flood and that the amount of petitioners' loss should be reduced by $ 4,600, the amount of the SBA loan forgiveness. The only dispute, then, is the amount of the loss to petitioners' realty. The burden of proof rests with petitioners. Pfalzgraf v. Commissioner, 67 T.C. 784, 787 (1977); Axelrod v. Commissioner, 56 T.C. 248, 256 (1971). To establish the amount of the casualty loss, the relevant fair market values "shall generally be ascertained by competent appraisal." Sec. 1.165-7(a)(2)(i), Income Tax Regs. Petitioners obtained an appraisal of the fair market value of the house before and after the flood from a local real estate agent. The testimony of the appraiser is not before the Court and his appraisal report does not contain any data to support his conclusions. The circumstances are such here that we draw no inference from the absence of his testimony that it would be unfavorable to petitioners, [3] but neither can we give his appraisal any weight. *471 The opinion of a landowner as to the value of his or her property is admissible in evidence without further qualification because of the owner's special relationship to that property. But, we are not bound to accept that testimony at face value, even though it is uncontradicted, if it appears to be improbable, unreasonable, or offered solely to serve the self-interests of the taxpayer. While the owners of property are competent to testify as to its value, the weight to be given their testimony will depend upon their knowledge, experience, method of valuation, and other relevant considerations. The only evidence of the property's pre-casualty and post-casualty values was attempted to be offered through the testimony of petitioner Thomas R. O'Rourke. He testified that the residence was worth $ 25,000 immediately prior to the flood and $ 18,400 immediately thereafter. His testimony does not reveal that these valuations are based upon any recognized method or methods of appraisal. Rather, they appear to be subjective values based, in the case of the post-casualty valuation, on what petitioners put into their property and, in the case of the pre-casualty valuation, on what it was *472 worth to petitioners not to look for another house. Accordingly, we find his valuations to be of little probative value. In arriving at our determination, we have fully considered the description of the damage, the expenses petitioners incurred and their personal labors to restore the property, and all other facts in the record. The matter is not susceptible of precise determination on this record. Indeed, it is a close question whether petitioners have introduced enough evidence to overcome the presumed correctness of respondent's determination. See Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a), Tex Court Rules of Practice and Procedure. Yet, doing the best we can with the materials before us, see Heyn v. Commissioner, 46 T.C. 302, 310 (1966), we find that the fair market value of the real property decreased $ 2,000 as the result of the damage caused by the flood. Accordingly, petitioners are entitled to a casualty loss deduction of $ 793.09 for 1972. In accordance with the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to this case.
3. Petitioners unsuccessfully attempted to obtain the testimony of the appraiser. His failure to appear as a witness, therefore, is not unexplained and the "absent witness" rule (see Kean v. Commissioner, 51 T.C. 337, 343-344 (1968), affd. on this issue 469 F.2d 1183, 1187-1188↩ (9th Cir. 1972)) is not applicable here.